## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHANA NIZEUL, on behalf of herself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ICF TECHNOLOGY, INC., ACCRETIVE TECHNOLOGY GROUP, INC., <br><br> Defendants. | **JURY TRIAL DEMANDED** <br><br> **August 29, 2024** |

## CLASS AND COLLECTIVE ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff Shana Nizeul ("Plaintiff") brings this wage and hour hybrid Class and Collective Action Complaint under federal and state law on behalf of herself and all other similarly situated Performers who provide online adult streaming for Defendants ICF Technology, Inc. ("ICF") and/or Accretive Technology Group, Inc. ("ATG") (collectively "Defendants").

## PRELIMINARY STATEMENT

Defendants have misclassified their Performers, including Plaintiff, as "independent contractors" when they are, in fact, employees under federal and state law. The United States Department of Labor has recently warned "[m]isclassified workers are denied basic workplace protections including rights to minimum wage

and overtime pay, making it harder for them to support themselves and their families. Lower pay caused by misclassification reduces workers' purchasing power, which undermines the entire economy."[1] Connecticut views the misclassification of employees as a serious issue. Indeed, Connecticut has formed a Joint Enforcement Commission on Employee Misclassification – consisting of the state's Department of Labor, Department of Revenue Services, Attorney General, Chief State's Attorney, and the Workers' Compensation Commission.[2]

Here, Plaintiff alleges that Defendants have subjected her and the Class/Collective members to improper pay practices by compensating them ***only*** for "paid chats" but not for the full period of time they are working, including "free chat" sessions when they are performing to attract customers for a "paid chat." In essence, these Performers are only paid for a part of the show. And Defendants track those paid minutes online as well as the total minutes online. This case is primed for class certification based on Defendants' own records.

Accordingly, Plaintiff brings this hybrid action with (i) a collective action under the FLSA; and (ii) a Rule 23(b)(3) class action for violations under

---

[1] https://blog.dol.gov/2022/06/03/misclassification-of-employees-as-independent-contractors-under-the-fair-labor-standards-act#:~:text=Misclassified%20workers%20are%20denied%20basic,which%20undermines%20the%20entire%20economy (last visited Apr. 29, 2024).
[2] https://portal.ct.gov/dol/divisions/wage-and-workplace-standards/jecworkermisclassification?language=en_US (last visited July 25, 2024).

Connecticut law, including the Connecticut Minimum Wage Act ("CMWA") (C.G.S. § 31-58), to recover unpaid minimum wages.

## PARTIES

1.  Plaintiff Shana Nizeul resides in Dayville, Connecticut. Plaintiff has been a performer for ICF since March of 2022

2.  ICF is a Washington state corporation with a principal place of business at 800 Stewart Street, Seattle, Washington 98101. ICF operates a number of online social media platforms such as "streamate" that shares adult content on websites such as streamate.com. The domain streamate.com is held by ICF.

3.  ATG is a Washington state corporation with a principal place of business at 800 Stewart Street, Seattle, Washington 98101. This is the same address as ICF. ATG owns more than 10% of ICF's stock. According to ATG's website, it "is an established, fast-paced web company based in the heart of Seattle searching for world class talent for a variety of tech based careers. ***We are a market leader in web-based live video streaming***."[3] The IP address associated with www.streamate.com is registered to Accretive Networks, a d/b/a of ATG.

---

[3] https://atg.applytojob.com/apply/ (last visited Apr. 29, 2024) (emphasis added).

4.     Defendants misclassify their Performers[4] who provide live adult performances to their customers as independent contractors. Defendants are, at all relevant times, joint employers of Plaintiff and the Class/Collective members under the FLSA and Connecticut law. Further, Defendants' operations are sufficiently interrelated.

5.     Multiple nominally separate entities are treated as a single integrated enterprise when they (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership. *Marstellar v. Butterfield 8 Stamford LLC*, No. 3:14-CV-1371(AWT), 2017 WL 4286364, at *3 (D. Conn. Sept. 27, 2017); *Murray v. Miner*, 74 F.3d 402 (2d Cir. 1996). Defendants' operations are interrelated and unified, they share common management, centralized control of labor relations, common ownership, common control, common website, common business purposes, and interrelated business goals. In addition, they jointly determine and manage the pay practices, rates of employee pay and method of payment, maintenance of employee records and personnel policies, practices and decisions with respect to the employees.

---

[4] "Performer" is a term utilized by ICF in its standard, uniform Agreement with Plaintiff and the Class/Collective members who are webcam performers who provide adult content on the internet.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over Defendants because they are the employers here under the FLSA and Connecticut law. During the class period, Defendants have employed over 40 performers in Connecticut who stream for Defendants.[5] Critically, while broadcast throughout the world, the streaming occurs in Connecticut, including at Plaintiff's Dayville residence.

7.     This Court has jurisdiction under FLSA, which authorizes private actions to recover damages for violations of their wage and hours provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question).

8.     This Court has supplemental jurisdiction over the Rule 23 class claims under 28 U.S.C. § 1367 because the state law claim arises out of the same common nucleus of operative fact as the federal claim.

9.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred in this District.

---

[5] https://www.streamatemodels.com/ (last visited February 28, 2024) (promoting 2,000 websites with "million of visitors"). The Class and Collective are not just female. According to ICF, "Webcam models come in all sizes, sexes, ethnicities, and orientations." *Id.*

## FACTUAL ALLEGATIONS

### Streamate Website

10.    Defendants operate a streaming website under the name Streamate.com (hereinafter "Streamate"). Streamate is in the business of providing live, simulcast adult entertainment to its customers, as depicted in the image below:



11.    In or about March of 2022, Plaintiff registered online with Streamate, executed an Agreement with ICF, and thereafter began streaming live performances for Streamate.

12.    Prior to signing the Agreement and registering with Streamate, Plaintiff, along with all other Performers, submitted application materials to be reviewed by Streamate.

13.    Streamate explains its services:

At Streamate, you can chat with amateur performers while watching them live on camera. We have performers of every type! Search for any keyword or browse through our categories to find what you're looking for. You can interact with performers and create a unique experience just for you.

If you see a performer you like, tap on the image to visit their profile and read more about them. If they're online and available, you'll see their free, live video and can start a conversation! You won't be charged unless you join a paid chat session. The per-minute prices for paid chats are listed in your local currency before you enter the chat. Your Streamate membership is free, and there is no monthly or recurring fee to view the site.[6]

14.    Streamate explains how Performers make money:

When you start streaming, you'll be in free chat mode. Members can enter your room, chat, and see your video. If they take you into one of the types of paid chat, non-paying customers can't see what's going on. When the paid show ends, you'll go back to free chat.

Members may show extra appreciation by giving you a one-time payment of "Gold." These bonus amounts are usually small, but can add up! They can be given in both free chat or paid chat.

You'll get a set percentage of all the money spent in your room. The more time you spent in paid chat and the more Gold you get, the more you'll make each week![7]

---

[6] https://streamate.com/support/faq (last visited Apr. 29, 2024).
[7] https://www.streamatemodels.com/ (last visited Apr. 29, 2024).

15.    On Streamate, thumbnails of the Performers are visible, and customers choose which Performer's stream they join.

16.    Like other adult entertainment streaming services, customers join a live stream to watch the Performers and interact in a "free chat." The "free chats" are more generally accessible, and Defendants severely limit the activity a Performer may engage in while in a "free chat."

17.    From there, the Performer may engage with a person for continued viewing in a "paid chat."

18.    Plaintiff and the Class/Collective members are not compensated for their time outside of the "paid chat."

19.    Defendants track both "total minutes online" and "total paid minutes online" for Plaintiff and each Class/Collective member.

**Defendants Exert Control Over the Performers**

20.    While the Performer is the one attempting to entice the customers to pay, ICF exhibits significant control over the manner in which they do so by way of written rules in the Agreement it requires all Performers to sign and follow.

21.    The standard Agreements between the Performers and ICF, including the one signed by Plaintiff, provide rules on what the Performers may and may not do during a stream.

22.    By way of example but not limitation, Performers are prohibited from involving alcohol in a performance and displaying "below the waist" nudity in so called "free areas."

23.    Additionally, notwithstanding the explicit nature of Defendants' business, Performers are prohibited from engaging in any activity that is "inappropriate," which is solely determined by ICF. ICF has full control in determining what is and what is not allowed while a Performer is streaming and performing both inside and outside of "paid chats." This is a subjective determination by ICF, and is made in their sole discretion.

24.    Defendants also have full control over the visibility of the Performers' streams. In other words, Defendants are able to control in their sole discretion whether a Performer appears on the first page of the Streamate website or, for example, the tenth. By controlling how visible a Performer's stream is, Defendants in essence control viewership, and therefore the amount Performers are able to earn.

25.    Defendants are also able to limit the ability of Performers to stream for reasons not related to the Agreement.

26.    Pursuant to a uniform Agreement with its Performers, ICF also requires that the images submitted by Performers to their website biographies be approved by ICF.

27.     Pursuant to a uniform Agreement with its Performers, ICF collects and captures biometric data from Plaintiff and the Class/Collective members.

28.     Pursuant to a uniform Agreement with its Performers, ICF uses the images and videos of Plaintiff and the Class/Collective members for Artificial Intelligence, including machine learning, "to train" and "to detect . . . if a room is empty."

29.     Pursuant to a uniform Agreement with its Performers, ICF restricts Plaintiffs and the Class/Collective members from promoting on any non-Streamate related websites, including Performers' personal social media accounts.

30.     Pursuant to a uniform Agreement with its Performers, ICF may terminate the Agreement in its "complete sole discretion for any reason whatsoever . . . ."

31.     ICF tells the Performers what equipment can be used for their webcamming, including a computer, a webcam and an internet connection.[8]

---

[8] https://www.streamatemodels.com/ (last visited February 28, 2024) ("You can start streaming with almost any modern computer running Windows or Mac OS! For the best video experience, we recommend a computer running an i7 processor (or equivalent) and at least 3 GB of RAM."); *id.* ("Any webcam will work, including a built-in laptop camera. To help you earn more attention, we recommend a widescreen webcam with HD quality video."); *id.* ("Any internet connection will get you started, but faster connections will ensure a better experience and higher quality video.").

32.    Performers must purchase this equipment for their work on streamate.com on their own and are not reimbursed by Defendants.

33.    Despite ICF having the final say as to what Performers can and cannot do while streaming, Plaintiff's compensation is directly related, and wholly dependent, on her performance.

34.    Performers are only compensated for a fraction of the time in which they are working.

35.    Plaintiff and the Class/Collective members can receive tips, called "Gold[9]" on Streamate, but Streamate retains 65% of the "Gold" earned by Plaintiff and the Class/Collective members.

### Defendants' Unlawful Payment Practices

36.    Performers, such as Plaintiff, begin their work by removing above-the-waist clothing or putting on a costume or other adult attire for webcamming, setting up their equipment, logging into Streamate, and then starting a stream. This is a benefit to Defendants. Defendants do not compensate Plaintiff or the Performers for this time.

37.    Upon beginning her "stream," Plaintiff turns on her camera and attempts to entice customers to join her private stream. Despite this being the period where Plaintiff is exerting the most energy and effort in her performance, that is,

---

[9] Each unit of "Gold" earned by Plaintiff is equivalent to one U.S. Dollar.

performing potentially explicit acts in order to entice customers to join a "paid chat," Plaintiff is **not** compensated for this time.

38.    Customers can view a preview of her stream, but join the private stream by clicking "Go Private" and paying per minute:



39.    Performers' compensation begins after, **and only after**, a customer joins the private stream and the customers submit the first payment.

40.    As a result of Defendants' payment practices, Performers are only compensated for a fraction of the work hours they provide to Defendants.

41.    Performers are not paid at all for the majority of their performance, much less compensated at the applicable federal and Connecticut minimum wages detailed in the chart below.

| Year | FLSA | Connecticut |
|---|---|---|
| August 1, 2021-July 1, 2022 | $7.25 | $13.00 |
| July 1, 2022-June 1, 2023 | $7.25 | $14.00 |
| June 1, 2023-December 31, 2023 | $7.25 | $15.00 |
| 2024 | $7.25 | $15.69 |

42.    Due to Defendants' pay practices, Performers do not receive minimum wage for all hours worked as required by state and federal law.

43.    In addition, Defendants profit off their employees by maintaining control over their intellectual property.

44.    Defendants track and monitor when Plaintiff is online, with metrics such as "total minutes online" (denoting all online time) and "total paid minutes online" (denoting when customers are paying for a private stream or chats).

45.    Pursuant to a common, uniform Agreement, ICF and/or ATG can record Plaintiff while she is performing and may use the recordings for their marketing and advertisements.

46.    Plaintiff receives no additional compensation for ICF's continued dissemination of her performances.

47.    As detailed above, Defendants exerted substantial control over the most basic aspects of Plaintiff's work. For example, ICF directed Plaintiff on what equipment to use; directed Plaintiff as to what she could and could not do while performing; made decisions on whether content was "appropriate" or not; and prohibited Plaintiff from advertising her social media accounts or private websites.

48.    The Performers' work was performed places of business, that is, the virtual meeting rooms and websites owned and operated by Defendants.

49.    The work performed by Performers, providing adult entertainment, is the same business provided by and engaged in by Defendants.

50.    The work performed by Performers is integral and indispensable to Defendants. Without the Performers, Streamate would not be in operation.

51.    Performers do not have a specialized skill. In fact, the Streamate website purports, "You only need three pieces of equipment to get started: a webcam, a computer, and an internet connection. That's it! *No technical skills required*."[10]

52.    Defendants set the pay to Plaintiff and the Class/Collective members.[11]

53.    Defendants misclassified Plaintiff and the Class & Collective members knowingly and willfully.

54.    Defendants paid Plaintiff and Class & Collective members under a common compensation plan and policy where the Performers were paid for only a fraction of the time they spent working for ICF.

55.    As a direct and proximate result of Defendants' misclassification, Defendants failed to pay Plaintiff and Class & Collective members the required

---

[10] https://www.streamatemodels.com/ (last visited February 28, 2024) (emphasis added).

[11] https://www.streamatemodels.com/#section-learnmore (last visited February 28, 2024) ("You'll get a set percentage of all the money spent in your room.").

minimum wage under federal and state law for the majority of the hours Performers worked.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

### FLSA Connecticut Collective Action Under 29 U.S.C. § 216(b)

56.    Pursuant to 29 U.S.C. § 216(b), Plaintiff brings this FLSA Collective Action as an "opt-in" on behalf herself and similarly situated Performers, which is defined as the following (hereinafter "Connecticut Collective"):

> All current and former individuals who work or have worked as Performers for ICF Technology, Inc. or Accretive Technology Group, Inc. in the State of Connecticut at any time three (3) years prior to the filing of this action through the entry of judgment in this action, and who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Connecticut Collective").

57.    Plaintiff and the Connecticut Collective members are similarly situated in that they all performed the same basic duties and assignments as described above. They were all subject to Defendants' common policies and practices, many of which are contained in the uniform Agreement.

58.    Plaintiff and the Connecticut Collective members are similarly situated in that they were all improperly classified as independent contractors, which resulted in the failure to receive the appropriate federal minimum wage.

59.    The key legal issue in the collective action – whether Defendants' classification policy and payment practices violate the FLSA – does not vary from

Connecticut Collective member to member.

60.    Defendants violated the FLSA by failing to pay Performers the minimum wage which they are entitled to, by retaining 65% of the tips earned by Performers, and for misclassifying them.

61.    Defendants' violations of the FLSA were willful, repeated, knowing, continuing and intentional, and economically damaged Plaintiff and the putative party plaintiffs of the Connecticut Collective.

62.    Defendants are aware of the requirements to pay Performers the required minimum wage, and enacted policies, practices and procedures to avoid doing so. At all times relevant hereto, Defendants have been aware of all the facts giving rise to the claims in this lawsuit.[12]

63.    Pursuant to 29 U.S.C. §§ 206(a)(1) and 216(b), Defendants are individually and/or jointly liable to Plaintiff and the Connecticut Collective members for the full amount of unpaid minimum wages plus an additional equal amount as liquidated damages, plus the attorneys' fees and costs.

**Class Action Under Fed. R. Civ. P. 23**

64.    This action is brought by Plaintiff as a class action pursuant to Fed. R.

---

[12] Defendants' continued willful violation of the FLSA is further evidenced by two lawsuits filed related to their unlawful payment practices. *See Tomasello v. ICF Technology, Inc. et. al.*, Civ. No. 2:23-cv-03759-MCA-JRA (D.N.J. 2023); *Mondello v. ICF Technology, Inc., et. al.*, 8:24-CV-01037 (M.D. Fla. 2024).

Civ. P. 23(b)(3) and for all claims asserted herein, on behalf of herself and the following, initially defined, Class:

> All current and former individuals who work or have worked as Performers for ICF Technology, Inc. and/or Accretive Technology Group, Inc. in the State of Connecticut at any time two (2) years prior to the filing of this Action through the entry of judgment in this Action ("Class").

65.    The claims brought pursuant to Connecticut State Law may be pursued by all similarly situated persons who do not opt-out of the Class Action pursuant to Rule 23.

66.    **Numerosity** – Although the exact number of Class members is uncertain and can only be ascertained through appropriate discovery, including discovery of Defendants' records, the Class is so numerous that the joinder of all members is impracticable. The Class is comprised of an easily ascertainable set of persons or entities who created webcam content for Defendants during the Class Period.

67.    **Commonality & Predominance** – There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. Questions of law and fact are common to all Class members because, *inter alia*, this action concerns Defendants' common business policies, as described herein, these common questions of law and fact include, without limitation:

    a.  Whether Defendants engaged in the conduct as alleged herein;

    b.  Whether Defendants paid their Performers for all time worked online;

    c.  Whether Plaintiff and the Class members were misclassified as "independent contractors" when they were actually employees;

    d.  Whether Plaintiff and the Class members were deprived the protections of employee status under the law; and

    e.  Whether Plaintiff and the Class members are entitled to damages, and the amount of such damages.

68.   **Typicality** – Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, performed and created web cam content for ICF and/or ATG.

69.   **Adequacy of Representation** – Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel who are experienced in consumer class-action litigation. Plaintiff has no interests which are adverse to, or in conflict with, other members of the Class.

70.   **Superiority of Class Action** – A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class members

would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, a class action presents far fewer management difficulties, conserves judicial as well as the parties' resources and protects the rights of each Class member.

71.     Defendants willfully violated federal and Connecticut State Law.

72.     Plaintiff and the Class members she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policies, practices, and customs regarding Defendants' classification and pay practices.

### COUNT I

**THE FAIR LABOR STANDARDS ACT OF 1938
MINIMUM WAGE VIOLATIONS
*(On Behalf of Plaintiff and the Connecticut Collective)***

73.     All previous paragraphs are incorporated as though fully set forth herein.

74.     The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §

206(a).

75.    At all relevant times, Defendants have been and continue to be, employers engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§206(a) and 207(a). Thus, Defendants are subject to the FLSA's minimum wage requirements.

76.    At all relevant times, Defendants have either employed, and/or continue to employ, Plaintiff and each of the Connecticut Collective members within the meaning of the FLSA.

77.    At all relevant times herein, Plaintiff and the Connecticut Collective have been entitled to the rights, protections, and benefits provided under the FLSA.

78.    At all relevant times, ICF and/or ATG failed to compensate Plaintiff and the Connecticut Collective members for all hours worked at the applicable minimum wage.

79.    As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiff and all similarly situated employees.

80.    Additionally, Defendants violated the FLSA by retaining 65% of tips earned by Plaintiff and the Connecticut Collective.

81.    Defendants knew or should have known that their pay policies and practices would result in failure to compensate Plaintiff and the Connecticut

Collective members at the applicable minimum wage for all hours worked by Performers as well as a failure to properly distribute all tips earned by Plaintiff and the Connecticut Collective.

82.    Defendants have violated and/or continue to violate, the FLSA. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

83.    Defendants have neither acted in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find either ICF or ATG not liable for liquidated damages, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

84.    Due to the aforementioned FLSA violations, Plaintiff and the members of the Connecticut Collective are entitled to recover from Defendants, compensation for unpaid wages and unlawfully withheld tips; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b), as well as prejudgment and post-judgment interest. *See* **Exhibit 1** (Consent to Join for Plaintiff Nizeul)

## COUNT II

### CONNECTICUT MINIMUM WAGE ACT
### MINIMUM WAGE VIOLATIONS
### *(On Behalf of Plaintiff and the Rule 23(b)(3) Class)*

85.    All previous paragraphs are incorporated as though fully set forth herein.

86.    Plaintiff and Class members are employees entitled to the CMWA's protections. C.G.S. § 31-58(e).

87.    Defendants are employers under the CMWA. C.G.S. § 31-58(d).

88.    Defendants are joint employers under Connecticut law and their operations are interrelated

89.    The CMWA requires employers to pay employees for all hours worked. C.G.S. § 31-21a(3).

90.    "Hours worked" includes "all time which an employe is employed or permitted to work, whether or not required to do so[.]" C.G.S. § 31-76b(2)(A); Regs., Conn. State Agencies, § 31-60-11.

91.    Connecticut has a statutory cause of action for straight time wages. C.G.S. § 31-72.

92.    At all relevant times, Defendants have employed, and/or continue to employ Plaintiff and each member of the Class within the meaning of the CMWA.

93. Pursuant to the CMWA, the Defendants are required to pay Plaintiff and the Class members all wages, when due, for all hours worked at hourly rates equal to the minimum wage rate under the CMWA.

94. Plaintiff and Class members' time spent online and engaging customers before entering private streams constitutes "hours worked" under the law, thus, ICF's failure to pay wages for said hours violates the CMWA.

95. Defendants failed to pay Plaintiff and the Class members for all hours worked, and thus failed to comply with the CMWA.

96. As alleged herein, Defendants failed to compensate Plaintiff and other Class members for all of the time they performed for the benefit of Defendants.

97. Defendants knew or should have known that their pay policies and practices would result in a failure to compensate Performers at the Connecticut minimum wage.

98. The foregoing conduct, as alleged, constitutes willful violations of the CMWA.

99. As a result of the foregoing conduct, as alleged, Defendants have failed to pay wages under the CMWA thereby violating and continuing to violate the CMWA.

100. Defendants have violated Connecticut State Law, including but not limited to the CMWA, by failing to pay Plaintiff and Class Members for their "hours

worked," including the time spent working for the benefit of Defendants while in the free chat area.

101.    Due to the Defendants' violations, Plaintiff, on behalf of herself and the Class members, has sustained losses and lost compensation as a proximate result of Defendants' violations, and are entitled to recover the amount of unpaid minimum wages, liquidated damages, attorneys' fees and costs, as well as pre-judgment and post-judgment interest.

102.    Accordingly, Defendant is liable to Plaintiff and the Class members for unpaid straight time wages calculated at "twice the full amount of such wages, with costs and such reasonable attorney's fee as may be allowed by the court" pursuant to C.G.S. § 31-72.

## COUNT III

### CONNECTICUT MINIMUM WAGE ACT
### OVERTIME WAGE VIOLATIONS
### *(On Behalf of Plaintiff and the Rule 23(b)(3) Class)*

103.    All previous paragraphs are incorporated as though fully set forth herein.

104.    Plaintiff and Class members are employees entitled to the CMWA's protections. C.G.S. § 31-58(e).

105.    Defendants are employers under the CMWA. C.G.S. § 31-58(d).

106.    Defendants are joint employers under Connecticut law and their operations are interrelated.

107.    The CMWA requires employers to pay employees overtime wages at a rate of one- and one-half times their regular rate for all the hours worked in excess of forty (40) hours in a week. C.G.S. § 31-60, 31-68, 31-76(a)-(c).

108.    Connecticut has a statutory cause of action for overtime time wages. C.G.S. § 31-72.

109.    At all relevant times, Defendants have employed, and/or continue to employ Plaintiff and each member of the Class within the meaning of the CMWA.

110.    Pursuant to the CMWA, the Defendants are required to pay Plaintiff and the Class members overtime wages, when due, for all hours worked in excess of forty (40) hours per week under the CMWA.

111.    Defendants failed to pay Plaintiff and the Class members overtime for all hours worked in excess of forty (40) per week, and thus failed to comply with the CMWA.

112.    Defendants knew or should have known that their pay policies and practices would result in a failure to compensate Performers at the appropriate overtime wage.

113.    The foregoing conduct, as alleged, constitutes willful violations of the CMWA.

114.    As a result of the foregoing conduct, as alleged, Defendants have failed to pay overtime wages under the CMWA thereby violating and continuing to violate the CMWA.

115.    Defendants have violated Connecticut State Law, including but not limited to the CMWA, by failing to pay Plaintiff and Class Members the appropriate overtime wage for their "hours worked" exceeding forty (40) hours per week including the time spent working for the benefit of Defendants while in the free chat area.

116.    Due to the Defendants' violations, Plaintiff, on behalf of herself and the Class members, has sustained losses and lost compensation as a proximate result of Defendants' violations, and are entitled to recover the amount of unpaid overtime wages, liquidated damages, attorneys' fees and costs, as well as pre-judgment and post-judgment interest.

117.    Accordingly, Defendant is liable to Plaintiff and the Class members for unpaid overtime wages calculated at "twice the full amount of such wages, with costs and such reasonable attorney's fee as may be allowed by the court" pursuant to C.G.S. § 31-72.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Class/Collective members, respectfully requests the Court grant the following relief:

A.    Certification of this action as a collective action on behalf of the Connecticut Collective, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b);

B.    Certification of the action as a class action under Rule 23 on behalf of the Class;

C.    Designation of Plaintiff as representative of the Connecticut Collective and the Class;

D.    Designation of Plaintiff's counsel as class counsel;

E.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and Connecticut State Law and that Defendants' violations as described above are to be found willful;

F.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert

with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

G.  An award of unpaid minimum wages to Plaintiff and the members of the Connecticut Collective and the Class;

H.  An award of all tips previously withheld by Defendants to Plaintiff and the members of the Connecticut Collective;

I.  An award of liquidated damages to Plaintiff and members of the Connecticut Collective and the Class.

J.  That Defendants be ordered and enjoined to pay restitution of unpaid wages to Plaintiff and the Connecticut Collective and the Class;

K.  An award of costs and expenses of this action together with reasonable attorneys' fees to Plaintiff and members of the Connecticut Collective and the Class; and

L.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Shana Nizeul, on behalf of herself and all others similarly situated, hereby demands a jury trial with respect to all issues triable of right by jury.

Dated:        August 29, 2024

By:    _____
Richard E. Hayber, Esq.
Hayber, McKenna & Dinsmore, LLC
Juris No.: ct11629
750 Main Street, Suite 904
Hartford, CT  06103
Tel.: 860-522-8888
Fax: 860-218-9555
Email: rhayber@hayberlawfirm.com

Charles J. Kocher, Esq., (*pro hac vice application forthcoming*) (NJ ID 016952004)
Tyler J. Burrell, Esq., (*pro hac vice application forthcoming*) (NJ ID 377942021)
Gaetano J. DiPersia, Esq., (*pro hac vice application forthcoming*) (NJ ID 442152023)
McOMBER McOMBER & LUBER, P.C.
50 Lake Center Drive, Suite 400
Marlton, NJ 08053
(856) 985-9800
cjk@njlegal.com
tjb@njlegal.com
gjd@njlegal.com

*Attorneys for Class Representative Plaintiff Shana Nizeul, on behalf of herself and all others similarly situated for the Rule 23(b)(3) Class and FLSA Collective*